Next case please. 3090241 Carol Jensen v. Rockford Counsel, you may proceed. Good morning, Your Honors. Opposing Counsel, my name is John Powers. I represent the plaintiff at Volant, Carol Jensen, in this matter. The Commission's decision from pages 1 through 16 gives the Court a pretty good statement of the facts in this case, along with a very good medical abstract. The problem is the last two pages of the Commission's decision seems to reflect the Commission's flaw here by applying the wrong legal standard in this case by requiring Ms. Jensen to prove the exact ecology of her condition. In other words, the Commission's saying it's not enough for her to show a prior state of good health, then an event occurring at work, and then a flare-up of her symptoms. She must state that it's either, or she must prove whether it's an irritant, or whether it's an allergen, or whether it's asthma, or what have you. In this case, there were seven doctors, six for the petitioner who said that there was a connection to her employment. Now, the doctors differed as to how her condition was connected to the employment, whether it was an allergic reaction, whether it was a reaction to mold or bacteria, whether it was a reaction to an irritant, whether it was a reaction to asthma or some type of flare-up of her asthma. In fact, the employer's section 12 examiner, Dr. Olson, on page 900 of the record, even he alludes to this by saying that the rapid onset of her symptoms, and then they improved when she was removed from work, seemed to suggest that she was exposed to something that was either not noted or not measured, that it was either a fume, vapor, or odor, or other contaminant. Let me ask you this. Whose burden is it to prove a causal relationship to the job? The petitioner at the plant. And how did she prove it? She can either prove it, one, through medical testimony, or prove it through a chain of events. And I believe she's done both here, but I don't think that the commission has even addressed the chain of events method of proving the case by requiring her to prove the exact etiology of her condition. Well, let's get into some of the facts. Isn't there evidence that the employer then brought in some experts to take samples, airborne sport concentration level samples, water intrusion tests, check for fungus? Did it basically show there was nothing specific that would cause this problem for her? Nothing that they tested for, which is what Dr. Olson, the section total examiner, he said in his report. And the only doctor that really even mentions the mold or the bacteria is Dr. Morris, and he opined that removing the sealing tile simply stirred up her symptoms. He didn't say whether it was an irritant, allergen, mold, or what have you, but he did comment. All right. So you've got the claimant who concededly has the burden of establishing the causal connection. Correct. You've got some evidence in the record to support that the respiratory problems were caused by the work environment. Some medical testimonies support your position. You've got some on the other side against your position. Can't the commission just decide to go with Olson? Well, the problem is with Dr. Olson's opinion, what he's basing that opinion on. And it's clear from his reports that he believes that you must identify the exact cause of the symptoms or the exact irritant. If you can't pinpoint it, then you can't say that it's work related. So if somebody shows up on the job and starts sneezing and there's no specific evidence one way or the other as to the cause of the problem, the claimant should win, according to you? Not necessarily. Because people sneeze everywhere all the time. I mean, I fairly rarely have had symptoms of chest tightness and difficulty breathing to the point where I needed to seek medical treatment and have a pulmonary test done showing that there is some airway restriction in my chest. So in this instance, I think her symptoms are much more severe than simply sneezing. But there's something aggravating her underlying condition, and even the employer's doctor concedes that. What if it's somebody's perfume? Is that a risk not exposed to the general public? What if she's allergic to somebody's perfume? I would say that, yes, in that situation, if her work requires her to be next to a coworker, it would be the same as being next to a coworker with, you know, very poor hygiene, you know, where you become physically ill and sick. How is she exposed under greater risk than anybody in any office building, if that's the case? You can't be around people wearing perfume. Well, that wasn't your question. Simply perfume. I mean, if maybe it's a particular brand of perfume that this particular worker is working with. Now, if it's any type of perfume, then I would say that would be more of an idiopathic condition from the petitioner's standpoint. So what if it's a particular brand? Isn't any worker in an office exposed to perfume, arguably? Well, from my experience, no. I mean, I'm not exposed to the daily perfume of my secretaries or staff on a routine basis. In fact, the majority of them I can barely smell any type of perfume on. Yeah, I don't want to get hung up on the perfume. I'm just saying that looking at the basic facts, the claimant has the burden. The claimant goes to the office. There's something that's causing a problem, arguably. But nobody knows what it is. Well, and you see, she's not required to prove what it is pursuant to the service versus industrial commission. If she can establish a prior condition of good health, something happened, and the facts are strong enough to show that, you know, something happened, and she's now had a trigger event of her symptoms, she doesn't have to prove the exact etiology or even the exact diagnosis. You have a legitimate argument. I think there is a doctrine of law that supports that very argument. But you've got to look at the case and the facts in the context that we're talking about here. We're talking about somebody who's not ñ this isn't a traumatic injury case. This isn't something specific. This is somebody who's working, seated in an office, who all of a sudden has some respiratory issues that nobody can discern the cause of. So I'm just asking if there was anything in the record to establish that, and you're saying basically no. Well, no. In fact, there are several doctors who give opinions. Now, the problem with this record, obviously, is the doctors differ. Some doctors say it's an allergen. Others say it's an irritant. Others say it's a ñ it was a fungal bacteria that was in the area. But all the doctors are saying it was something in the workplace. I mean, it's not like there's another doctor saying, no, this has absolutely nothing to do with the workplace. Here's an alternative explanation. Here's the question. They're saying it's something in the workplace with the same level of expertise as the commission, right? I mean, they cannot pinpoint the airborne particle or the fungus or anything, but they're working with this. She was apparently okay until she went into the office, and then when she left the office, she recovered, and we had this repeating activity. Okay? Now, just because somebody has an M.D. degree and arguably can identify fungi and bacterium, okay, since they haven't identified a fungi or bacterium source with any degree of reasonable medical certainty that it's that, aren't they just in the same position as someone just thinking logically? Because that's all it is, basically, is that I have a condition, now I'm exposed, and I have a different condition, and we think that something in that environment at work led to this condition. Well, I think that's why the law allows for that particular argument under Ganell and Rector. That theory of recovery. Right. Well, then the doctors are irrelevant here, because they have nothing in their area of expertise, apparently, to say. Well, I think to some degree they are relevant, because in the depositions of Dr. Cal and Dr. Olson, I think Dr. Cal explains, you know, it's more likely to be an irritant than an allergen due to her immune system, the tests that were done, and so forth. And they can pinpoint that there is something going on with her physically. But as far as what the exact trigger of that is, you know, that's a disagreement. Well, Olson did opine that her condition was not related to the exposure at work. He did give that opinion. He gave that opinion, but when you read his report. So I understand what you're saying. You're attacking the credibility of his opinion. But that was for the clinician to do, too. Well, not so much the credibility of his opinion. Yes. But how he's formulating that opinion. I understand that. It's what's behind the opinion. Did you move to strike it, because it was not proper medical testimony? No. So weight is for the clinician. Not that it was not proper medical testimony. It says the incorrect standard under all my law. It's similar to a doctor saying, well, it's not the sole cause, therefore it's not related. That attacks the basis of his opinion. You should have moved to strike it. You didn't move to strike it, so it's still there. The question is, now it's weight. Now the commission has to give it weight. And we've got a situation here where nobody can figure out what's wrong with this woman, but we've got one guy here that says it's not causally related to exposure at work. You attack the basis for that opinion. But the commission accepted it. But that's the exact same person who said that due to the rapid onset of her symptoms and improvement when she left the workplace, that more likely it was something that was not tested for or measured, like a fume, odor, or other type of irritant or contaminant. Could have been. Right. And he said, but because you cannot pinpoint it, therefore you cannot say it's work-related. And that's the same flawed theory as what the commission, the basis of their decision is. Because you cannot pinpoint the exact ecology of her symptoms, you cannot say it's work-related. And it's similar to a construction worker falling from a 30-story building and crashes his scaffolding. One doctor says, well, he had a heart attack and died on the way down. The other doctor says, well, it's a crash of the scaffolding that killed him. The other doctor says, it's because he splattered all over the sidewalk. That's what killed him. Then the fourth doctor said, no, it's a fall from the building. So because you have four different opinions as to how he died, is it now, well, he can't prove an accident? Of course not. This case is very similar to that analogy. You have seven different doctors giving opinions as to what her underlying ecology is. Now, there's variations from each one of those doctors as to what it is. But they all have a common string. It all relates back to the ceiling tiles being removed from her workplace. Not only do doctors don't relate it to the ceiling tiles. But doctors do not relate it to the ceiling tiles. Cole merely says that he believes that she suffered from some form of asthma that was exacerbated by some exposure at the workplace. But nobody can pinpoint the ceiling tile. Or they would have been able to identify the contaminant. Okay. Or at least some exposure to the workplace. Well, something, but why? Exactly. What if she was exposed to something that everybody's exposed to in their own kitchen? We don't know. Until we know what she's exposed to, how do we know she's been exposed to a risk greater than that which the ordinary person is exposed to? Because each time she went to the workplace, her symptoms were aggravated. When she was removed from the workplace, or removed from that area, her symptoms improved. No, no, I heard that argument before. I understand that. But you also have an opinion by Olson that says, not causally related to any exposure at work. And granted, he turns around and says, it's not anything exposed to work, because nobody can tell us what she was exposed to at work. And so you cannot say that she's exposed, the condition was caused by exposure. And I think that goes to the weight of his opinion. It doesn't go to the admissibility of it. So if it's in evidence, now the weight goes to the commissioner. They chose to give it weight. They followed it, evidently. I think that the record's clear that the underlying basis of his opinion is flawed, pursuant to Illinois law. And I would also argue that, you know, she could just as easily prove her case by showing with the strong set of facts, prior stable condition, event happened at work, and then her medical condition destabilized. When she was removed from work, she improved. When she came back, her condition was fired up. So I request that the court reverse, set aside the commission's decision, reinstate the arbitrator's decision, or, at the very minimum, remand this matter back to the commission for them to address that last aspect, whether or not Jensen has proved her case through the chain of events theory. Thank you. Good morning. Brad Elward on behalf of Rockford Mutual. We think this is a manifest weight case, but before I get into that discussion, what I'd like to do is address a couple of comments that my opponent made with respect to the commission majority applying the wrong standard. Essentially, what he's arguing to the court is this is a chain of events. This is the same argument he's been making in response to our review to the commission and at the circuit court. And the chain of events doesn't apply in this case. And the two cases that he cited, which are servicerred and consolidated coal, I think demonstrate exactly why that is. I'll get into the facts of those in a second, but I think what we need to draw from both of those cases is simply this. In servicerred and in consolidated coal, you had an application of or discussion of the chain of events coupled with evidence of a specific exposure to an irritant. We don't have that here. And that's why these cases don't apply. If we look at servicerred, we have a gentleman who was diagnosed with ocular histoplasmosis. He was working, removing a bird nest, and it fell on him. Some of it got in his eyes and his hair and his face. He diagnosed the condition of his eyes as ocular histoplasmosis. And there was medical evidence in that case. There was two doctors. One testified that, well, it doesn't necessarily cause that. We haven't definitively proved that. The other doctor said, yes, when you're exposed to bird droppings, it can cause the ocular histo. And in that case, they found it compassionate. Now, our case is different than that because we don't have anything that they can demonstrate, anything they can point to at work, which would indicate an increased risk or a specific exposure. Now, the consolidation coal case is exactly the same. In that case, you have the coal miner who is diagnosed with a condition, specifically diagnosed with an upper left lobe infectious process due to plastomycosis. And the evidence in that case indicated that the fungi which produces the blastomycetes are found in all soil. So we've got a gentleman who's working around soil. All soil contains this. He's got a condition that was specifically diagnosed as emanating from the soil. So they discuss a chain of events, and there's also causal evidence, and there's identification of the risk associated with the employment. We don't have that here. Now, we point to the two cases that we cited in our brief, Weakley and the other case of Bernadone. In both of those cases, we see some similarities to what we have here. We have a petitioner who shows up at work, alleges that they're experiencing a spiking of symptoms. They don't experience them. They said they didn't experience them prior to that. There's some testimony that, well, maybe I did experience outside work, maybe I didn't. In both of those cases, the claims were denied by the Commission and affirmed by this Court because there was no evidence to specifically tie in their condition to something at work. For example ---- Let me ask you this. Isn't there a line of cases that say a precise diagnosis is not as required if the physical causal sequence is sufficiently present? Do you always have to have a precise diagnosis in a case like this? There are cases that generally say that, yes, I don't think they specifically apply to this case because we've got a very complex fact pattern. As the Court's question and my opponent has already indicated in our brief show, this is a very complex case. This is not a simple back injury or repetitive trauma type case where you've got a preexisting degenerative condition and a question about whether or not an active work that might be repetitive causes a back problem. We've got a very complex exposure case here where we really don't know what it is and we don't know what caused it. And here, without knowing what it is, we can't even look to see what might have been the trigger. As the Court's pointed out, there were ---- and the Commission relied on three different tests that were performed on the premises and they don't show any airborne irritants or anything in the air that could have caused a problem. Those were reviewed by Dr. Olson. His testimony was adopted by the Commission majority and we think that any criticism of that is essentially trying to re-argue the case.   I think that there are a lot of things that manifest the way we control in that situation. If I may briefly get back to the Weakley case. In Weakley, the Petitioner alleged she was exposed to chemicals at the workplace during a remodeling project. It sounds very similar to what we have here. She had a host of symptoms that developed but they never were able to identify what it was in that remodeling process. And the Court said that the claimant failed to establish any causal connection between her symptomatology and the materials used in the remodeling project. And what I thought was even more important is that the claimant did not establish any type of risk in her work environment greater than that which the general public faced. And that's what we have here. They have not identified what the risk was. And it's their burden. They've got to come in and say she was exposed to some type of irritant. Not just an irritant or she was at work and this happened. They've got to say what it was. That's exactly what happened in Weakley. That's exactly what happened in Bernadone. And those are unanimous decisions of this Court, the firm and the commission. And if we were to go against that in this case, we'd have to address why we're ruling inconsistently with those two decisions. And I'm not sure that we can logically do that. They've got to demonstrate in a claim such as this what it was at work that caused this and what triggered this. And they didn't do it. Now, yes, Dr. Wilson makes some comments that, well, the temporal arrangement of this fact pattern might suggest that there was something at work. But they've still got to come in and say what it was at work. We don't know. And the Court made a great comment. We don't know if it was something at work that was the same thing she faced in her car, in her home. We don't know what that is. And the commission has looked at this. They've evaluated this with the arguments of the chain of events. They've evaluated the medical, which was substantial in this case. They've looked at Dr. Cowell. They focused on his opinions. And they focused on Dr. Olson's. And they focused on the tests. And they drew their conclusions. And they said you didn't meet your burden of proof. You didn't show a risk. You didn't indicate that what happened at the employment presented a greater risk than people in the general public. And because of that failure, we're asking the Court to affirm. We think this is a simple manifest way to the evidence case. The cases that they've cited can easily be distinguished. And we have authority that supports our position. So we ask that you affirm. Thank you. Thank you, Counsel. Counsel, you may reply. I would point out something that's extremely important in the Bernard Dawley case that Counsel seemed to have overlooked, which is the commission found an accident in that case and awarded the petitioner $10,000 and temporary total disability benefits of about $1,000 in medical benefits. They found that because she returned back to work with no symptoms before she had another condition develop, that there was no permanency in that case. And also the employer in that case had doctor's opinion stating that the condition of ill-being that the petitioner suffered from at the time of her arbitration was due to her years of smoking and not due to her exposure in the accident. That's why the commission found no permanency in that case. But they did specifically find accident award benefits to the petitioner. And weakly it was in some respect the same because there was a contrary opinion explaining her symptoms, which was somatiform disorder. In this case, there's no contrary opinion saying what an alternative explanation is. The only opinion that's negative to the petitioner is obviously Dr. Olson saying this isn't causally related because Dr. Olson obviously believes you have to pinpoint the exact nature of what or give a diagnosis of what the condition is. Lastly, I would argue that some things you just cannot measure with today's technology or cannot be detected due to the length of time away from the exposure. Maybe it's gone. But it doesn't necessarily negate that there was an exposure to something. And in this situation, this is a clear showing that she was fine up to July 3rd, up to when they were doing the remodeling. She had the flare-up of her symptoms. They improved when she left the workplace. And that was consistent all throughout. Each time she came back to the workplace, she had flare-up of symptoms. When she was removed, symptoms improved. So once again, I would ask that the court reverse the commission's decision. Thank you. Thank you, counsel. This matter will be taken under advisement and written disposition.